UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

TAMMY ANDERSON                                                                           Plaintiff

v.                                                                  Civil Action No. 3:23-cv-209-RGJ

DWAYNE CLARK, *et al.*                                                                Defendants

\* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Tammy Anderson ("Anderson"), initiated this lawsuit on April 25, 2023. [DE 1]. Dwayne Clark, Steve Durham, Eric Troutman, and Martin Baker (collectively, "Defendants") move to dismiss. [DE 15]. In response, Anderson moves for leave to amend and files a first amended complaint. [DE 17]. Defendants responded to that motion, and Anderson replied. [DE 21; DE 22]. Accordingly, this matter is ripe for adjudication. For the reasons below, Defendants' motion to dismiss is **DENIED** and Anderson's motion for leave to amend is **GRANTED**.

**I.      Background**

This case arises from the death of Anderson's son, Moman Anderson, Jr., who died of a drug overdose in the custody of Louisville Metro Department of Corrections ("LMDC"), on or about March 12, 2022. [DE 1 at 2; DE 15 at 82]. Following his death, as administratrix of his estate, Anderson brought suit against five named defendants. Four of these defendants were employees of LMDC, including Director Dwayne Clark, Assistant Director Steve Durham, Chief of Staff Eric Troutman, and Deputy Director Martin Baker. [DE 1 at 3]. Importantly, the complaint purports to sue each of these four defendants in their "individual capacity." [*Id.*]. The fifth defendant is Wellpath, LLC, the contracted medical services provider at LMDC. [*Id.*]. The complaint alleges five counts against all defendants which include: negligence (Count I);

1

negligence *per se* (Count II); wrongful death (Count III); "*Monell* violations: policies or customs of inadequate conditions of confinement & inadequate medical care in violation of the eighth and fourteenth amendment" (Count IV); and "*Monell* violations: failure to adequately train officers in violation of 42 U.S.C. § 1983" (Count V). [*Id.* at 13–23]. Although the original complaint alleges all four individual defendants acted "under color of state law," [*id.* at 3], it does not explicitly name Louisville Metro Government ("Louisville Metro") as a party or purport to sue the individual defendants in their official capacity.

## II.     Discussion

Under Federal Rule of Civil Procedure 15, "a party may amend its pleading only with . . . the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). However, when a plaintiff seeks to amend after the statute of limitations has run, the amendment must relate back to the original complaint. In such cases, Rule 15(c)(1) provides that "[a]n amendment to a pleading relates back to the date of the original pleading when:"

> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or
>
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>
>> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
>>
>> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1)(B)–(C). Anderson concedes that a one-year statute of limitations applies, and that she seeks to amend outside the statute of limitations. [DE 22 at 139]. She also concedes that this means the amendment must relate back to the original complaint. [*Id.*]. As a result,

2

Defendants' motion to dismiss presents three distinct questions to resolve: (1) whether naming Defendants in their official capacity constitutes adding a new party by bringing in Louisville Metro, (2) whether the amended complaint relates back under Rule 15(c)(1)(B), and (3) whether the amended complaint relates back under Rule 15(c)(1)(C).

### A. Is Louisville Metro a "new" party?

Defendants argue that Anderson fails to state a *Monell* claim against them because the complaint named them in their individual capacity only. [DE 15 at 84]. In Anderson's motion for leave to amend, she asserts the "sole purpose" of her amended complaint "is to assert claims against Defendants in their official capacity" and that the amended complaint is "proper pursuant to FRCP 15(c)(1)(B) and 15(c)(1)(C)" because it "does not name any additional Defendants nor assert any additional claims[.]" [DE 17 at 94]. Defendants respond that "[Anderson] is barred by the statute of limitations from bringing forth these claims against a *new* defendant[.]" [DE 21 at 133 (emphasis added)].

Typically, in the Sixth Circuit, "an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." *Asher v. Unarco Material Handling, Inc.*, 596 F.3d 313, 318 (6th Cir. 2010) (citation omitted). An amendment that changes or substitutes a party is different from an amendment that adds a new party. *See Rayfield v. City of Grand Rapids, Michigan*, 768 F. App'x 495, 502 (6th Cir. 2019) ("Rule 15(c) is inapplicable when the plaintiff seeks to *add*, rather than subtract or change, the named defendants.") (emphasis in original); *Ham v. Sterling Emergency Servs. of the Midwest, Inc.*, 575 F. App'x 610, 616 (6th Cir. 2014) ("An amendment that *changes* the party against whom a claim is asserted relates back under Rule 15 if the remaining requirements of Rule 15(c)(1)(C) are met.") (emphasis added) (cleaned up); *In re Kent Holland Die Casting & Plating, Inc.*, 928

3

F.2d 1448, 1450 (6th Cir. 1991) ("FRCP 15(c)[(1)(C)] allows the correction of misnomers, but not the addition or substitution of new parties after the statute of limitations has expired.") (citing *Ringrose v. Engelberg Huller Co.*, 692 F.2d 403, 405 (6th Cir. 1982)).

But in the context of § 1983, the Sixth Circuit has explained that "when a § 1983 plaintiff seeks to alter the capacity in which a defendant has been sued, we have held this type of alteration acceptable under Rule 15(c)[(1)(C)]." *Moore v. City of Harriman*, 272 F.3d 769, 773 (6th Cir. 2001) (citing *Brown v. Shaner*, 172 F.3d 927, 934 (6th Cir. 1999)); *see also Nails v. Riggs*, No. CIV.A. 302CV317H, 2003 WL 22326971, at *4 (W.D. Ky. Oct. 8, 2003) ("[B]y adopting the 'course of proceedings' test, the Sixth Circuit relaxed the holding set forth previously in *Wells v. Brown*, in which the court held that the plaintiff must clearly plead 'individual capacity' on the face of the complaint.") (citation omitted). In such cases, the Sixth Circuit has "applied a 'course of proceedings' test to determine whether § 1983 defendants have received notice" for the purpose of deciding "whether suit has been brought against a state official as an official or as an individual." *Moore*, 272 F.3d at 772–73; *see also Penman v. Correct Care Sols.*, No. 5:18-CV-58-TBR, 2018 WL 6242132, at *2 (W.D. Ky. Nov. 28, 2018) ("[A] § 1983 complaint only need 'afford the defendant fair notice of what the claim is and the grounds upon which it rests.'") (quoting *id.* at 772). In *Moore*, the Sixth Circuit looked to both the language of the complaint and to the broader course of proceedings to determine whether the officers involved had sufficient notice that they were being sued in their individual capacities, even though the complaint did not explicitly purport to sue them in their individual capacity.[1] *Id.* at 773–774. The *Moore* court then concluded that

---

[1] Generally, "[courts] assume that a government official is being sued in his official capacity, unless the pleadings provide notice that he is being sued individually." *Vittetoe v. Blount Cnty., Tennessee*, 861 F. App'x 843, 851 (6th Cir. 2021). In this case, the opposite problem presents itself—Anderson specified that she was suing Defendants in their indivdual capacity but did not specify that Defendants were also being sued in their official capacity, which would bring in Louisville Metro as a defendant.

4

the amended complaint, despite falling outside the statute of limitations, properly related back to the original complaint under Rule 15(c)(1)(C). *Id.* at 774; *see also Nails*, 2003 WL 22326971, at *4 ("A change in capacity is analyzed under Rule 15(c)[(1)(C)], and under this rule, Plaintiff is permitted to amend a complaint after the statute has expired if she can show it 'relates back' to the original complaint.").

Applying the course of proceedings test from *Moore*, the complaint provided sufficient notice to Louisville Metro that it intended to include it. While it names Defendants in their "individual capacity," it also alleges they were "acting under color of state law and within the scope of [their] employment." [DE 1 at 3]. Additionally, the complaint is careful to cite the titles of the Defendants—director, assistant director, chief of staff, and deputy director at LMDC—and refers to them collectively as the "administration of LMDC" or "LMDC Administration" at multiple points. [*Id.* at 3–4, 12, 20]. For a § 1983 *Monell* claim, the LMDC administration would be the same as Louisville Metro itself. *Spencer v. City of Hendersonville*, 487 F. Supp. 3d 661, 675 (M.D. Tenn. 2020) ("[C]laims against [Defendants] in their official capacities are equivalent to, and redundant of, claims against the City itself.") (citing *Kentucky v. Graham*, 473 U.S. 159, 166, 167 n. 14 (1985)). Anderson's original complaint also alleges constitutional violations, a failure to "institute any (or adequate) policies, rules, customs, practices, or procedures or to employ qualified persons, or to properly [sic] corrections officers and/or medical staff and/or to supervise same so as to prevent or alleviate the conditions and results such as those set forth herein," and contains an entire portion of the fact section set aside to address "[w]idespread practices, policies, customs and decisions of LMDC Administration deprive detainees and inmates of rights guaranteed under the Fourteenth Amendment[.]" [DE 1 at 7, 9–13].

5

While this case is different than *Moore*—Anderson *did* specify a capacity, explicitly naming Defendants in their individual capacity—its principles apply with equal force here. [*Id.* at 3]. Because § 1983 claims require a government defendant, ambiguity is more likely to exist when a plaintiff fails to specify suing an officer in their *individual* capacity, as is true in every case cited by Anderson and Defendants. Even though Anderson omitted the magic words "and their official capacity" in the original complaint, it is clear from the rest of the complaint that "[Anderson] intended to hold the [municipality] responsible for [Defendants'] actions." *Lovelace v. O'Hara*, 985 F.2d 847, 850 (6th Cir. 1993). In *Lovelace*—a case Defendants heavily rely on—the original complaint specifically alleged that the defendant "acted 'not as an individual,' but 'clearly within the expressed and implied powers of his official capacity.'" *Id.* But Anderson's complaint does not disclaim suing Defendants in their official capacity. Instead, it is replete with evidence that she intended to hold the municipality accountable,[2] including the fact that she brought a *Monell* claim at all. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978) ("[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."). Because § 1983 *Monell* claims can be

---

[2] In *Penman*, the Court explained that *Moore* held the defendants had sufficient notice of being sued in their individual capacities "based on four factors":
> (1) the complaint's caption listed only the defendants' names—not their official titles, (2) the complaint referred to the defendants as "individual defendants," (3) a paragraph of the complaint stated that "[the defendants] acting for themselves and for the City," behaved with "malice ... and violated the plaintiff's civil rights," and (4) the plaintiff sought compensatory and punitive damages. *Moore*, 272 F.3d at 773. The *Moore* court held further that "[e]ven assuming the complaint itself failed to provide sufficient notice, Moore's response to the [plaintiff's] motion to dismiss clarified any remaining ambiguity." *Id.*

2018 WL 6242132, at *2. The factors apply conversely here, but the same result ensues: (1) Anderson's complaint *does* list Defendants' official titles, (2) the complaint consistently refers to Defendants as "LMDC Administration," (3) the complaint consistently lumps in Defendants' actions as enacting the city's official policies and customs, and (4) Plaintiff seeks municipal liability via § 1983 under *Monell*, which is possible only if Louisville Metro is a party.

brought *only* against a government actor, it is much more likely that an individual would lack notice that he was being sued in his individual capacity (which is optional for a *Monell* claim) than a municipality defendant would lack notice that it was being sued via an officer's official capacity (which is required for a *Monell* claim). *See id.* ("[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents."). Indeed, it is telling that all Anderson had to do to rectify her complaint was change "in his individual capacity" to "in his official and individual capacity" for each Defendant. [DE 17-2 at 100]. The original complaint already alleged sufficient facts to state a claim that Louisville Metro was the "moving force of the constitutional violation," *Monell* at 694, and the two *Monell* claims would apply only to Louisville Metro, not to the Defendants in their individual capacity.[3] *See Phillips v. City of Cincinnati*, No. 1:18-CV-541, 2019 WL 2289277, at *6 (S.D. Ohio May 29, 2019) ("Even if [individual defendants] were found to have instituted an unconstitutional policy, liability under *Monell* would fall to the City.").

For these reasons, the Court finds that this alteration in capacity does not amount to the naming of a "new" defendant in Louisville Metro, and Louisville Metro had sufficient notice that it could be liable under § 1983. As a result, the Court considers whether the amendment relates back for the purposes of Rules 15(c)(1)(B) and 15(c)(1)(C).

### B. Relation back under Rule 15(c)(1)(B) and Rule 15(c)(1)(C)

The Sixth Circuit has suggested, but never decided, that Rule 15(c)(1)(B) may contain an independent basis for an alteration in capacity to relate back to an original complaint. *Shaner*, 172 F.3d at 932 ("While we do not necessarily agree with the district court that identifying the

---

[3] In addition to the language and claims in the complaint itself, Louisville Metro's own attorneys have appeared on Defendants' behalf, [DE 15-1 at 91], even though Defendants were served at home and were no longer employed by LMDC when served. [DE 8; DE 9; DE 10; DE 11; DE 21 at 134]. This confirms Louisville Metro's awareness of potential liability.

defendants in their 'individual' capacities in the amended complaint constitutes a change in parties, we need not decide that issue in this case because . . . the requirements of 15(c)[(1)(C)] have been met."). In *Penman*, the court picked up on this suggestion and applied Rule 15(c)(1)(B) in such a way. *Penman*, 2018 WL 6242132, at *3 ("This Court is convinced that Rule 15(c)(1)(B) does provide an independent basis for relation back."). In this case, the Court finds similarly. Because *Moore* and *Shaner* do not treat an alteration in capacity as changing or adding a party, it follows that it is also unnecessary to apply Rule 15(c)(1)(C) for the amended complaint to "relate back." Instead, it is enough for the amendment to "ar[ise] out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading," as it does here.[4] Fed. R. Civ. P. 15(c)(1)(B).

Even if Rule 15(c)(1)(B) does not provide an independent basis for relation back, the amended complaint still relates back under Rule 15(c)(1)(C). The Court has already explained that Rule 15(c)(1)(B) is satisfied, as 15(c)(1)(C) requires. *See Moore*, 272 F.3d at 774 ("There is no question that the original and amended complaints involve the same conduct, and thereby satisfy the requirements of Rule 15(c)[(1)(B)].") Louisville Metro also "received such notice of the action that it will not be prejudiced in defending on the merits" because Defendants informed it of the complaint after being served. Fed. R. Civ. P. 15(c)(1)(C)(i). Shortly after this case was filed in April 2023, Louisville Metro received informal notice from Defendants after they were served in June 2023 and Anderson filed her amended complaint in August 2023. The Court does not find that these four months were long enough to prejudice Louisville Metro in its defense. And, based on the details in the complaint and the nature of the claims, Louisville Metro "knew or

---

[4] This result is also in keeping with the "purpose of relation back[.]" *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 549 (2010) (explaining that "relation back" exists "to balance the interests of the defendant protected by the statute of limitations with the preference expressed in the Federal Rules of Civil Procedure in general, and Rule 15 in particular, for resolving disputes on their merits.").

should have known that the action would have been brought against it" but for Anderson omitting the words "official capacity" next to Defendants' names. Fed. R. Civ. P. 15(c)(1)(C)(ii). Finally, although Louisville Metro did not receive "independent notice" of the complaint, Defendants provided it informal notice that satisfied the 90-day time requirements of Federal Rule of Civil Procedure 4(m).[5] [DE 21 at 135 n. 6]. Because Defendants informed Louisville Metro after they were served—roughly 60 days after the original complaint was filed—Louisville Metro had notice within the 90-day period required by Rule 4(m). [*Id.*]. Accordingly, all the requirements of Rule 15(c)(1)(C) are met, and so the amended complaint properly relates back to the original complaint.

### III. Conclusion

For the reasons explained, and the Court being otherwise sufficiently advised, Defendants' motion to dismiss is **DENIED** and Anderson's motion for leave to amend is **GRANTED**.

February 15, 2024

Rebecca Grady Jennings, District Judge
United States District Court

cc: counsel of record

---

[5] Rule 15(c)(1)(C) does not require that Louisville Metro be served in accordance with Rule 4(m), but only that it received notice so that it would not be prejudiced and knew or should have known that the action would have been brought against it within the period Rule 4(m) provides "for serving the summons and complaint." Fed. R. Civ. P. 15(c)(1)(C). That requirement is satisfied here.