UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

TAMMY ANDERSON Plaintiff

v. Civil Action No. 3:23-cv-209-RGJ

DWAYNE CLARK, *et al.* Defendants

* * * * *

**MEMORANDUM OPINION AND ORDER**

This case previously came before the Court on the motion of now-dismissed Defendant Wellpath, LLC ("Wellpath") to dismiss all claims against it. [DE 39]. Plaintiff Tammy Anderson ("Plaintiff") responded, [DE 44], and Wellpath replied [DE 45]. Dwayne Clark, Steve Durham, Eric Troutman, and Martin Baker (collectively, "Individual Defendants") (collectively with Wellpath, "Defendants") move for judgment on the pleadings [DE 41]. Plaintiff responded, [DE 47], and Individual Defendants replied. [DE 50]. The motion to dismiss was adopted by Wellpath's successor in interest, Nominal Defendant Wellpath Liquidating Trust Wellpath, LLC (the "Trust"). [DE 74]. This matter is ripe. For the reasons below, Wellpath's motion to dismiss [DE 39], as adopted by the Trust [DE 74], is **GRANTED in part and DENIED in part**.

## I. BACKGROUND

This case arises from the death of Anderson's son, Moman Anderson, Jr. ("Decedent"), who died of a drug overdose in Louisville Metro Department of Corrections ("LMDC") custody, on or about March 12, 2022. [DE 25 at 158]. Following his death, Plaintiff sued four individual defendants and one corporate defendant. The Individual Defendants, Director Dwayne Clark, Assistant Director Steve Durham, Chief of Staff Eric Troutman, and Deputy Director Martin Baker were employees of LMDC at the time of Decedent's death. [DE 25 at 158–59]. The fifth

defendant, Wellpath, was the contracted medical services provider at LMDC. [*Id.*]. The complaint alleges five counts against all defendants: negligence (Count I); negligence *per se* (Count II); wrongful death (Count III); "*Monell* violations: policies or customs of inadequate conditions of confinement & inadequate medical care in violation of the eighth and fourteenth amendment" (Count IV); and "*Monell* violations: failure to adequately train officers in violation of 42 U.S.C. § 1983" (Count V). [*Id.* at 169–79].

On February 27, 2026, the Court granted Wellpath's motion to dismiss all claims against it based on the discharge of claims pursuant to a plan of reorganization confirmed by the United States Bankruptcy Court for the Southern District of Texas. [DE 71; DE 69].[1] The Trust has now adopted Wellpath's motion to dismiss. [DE 74-1 at 958 ("As nominal defendant and successor in interest to Wellpath, the Trust is compelled to and has no objection to adopting the Motion that is before the Court. Accordingly, the Trust has no objection to the Court issuing a ruling on the Motion based on the filings before it.")].

## II. STANDARD

Federal Rule of Civil Procedure 12(b)(6) instructs that a court must dismiss a complaint if the complaint "fail[s] to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). To properly state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). When considering a motion to dismiss, courts must presume all factual allegations in the complaint to be true and make all reasonable inferences in favor of the non-moving party. *Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citation omitted). "But the district court need not accept a bare assertion of legal conclusions." *Tackett v. M & G Polymers*,

[1] This matter was stayed as to all Defendants pending resolution of Wellpath's bankruptcy matter. [DE 59]. However, on July 22, 2025, the Court lifted the stay. [DE 67].

USA, LLC, 561 F.3d 478, 488 (6th Cir. 2009) (citation omitted). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "A complaint will be dismissed . . . if no law supports the claim made, if the facts alleged are insufficient to state a claim, or if the face of the complaint presents an insurmountable bar to relief." *Southfield Educ. Ass'n v. Southfield Bd. of Educ.*, 570 F. App'x 485, 487 (6th Cir. 2014) (citing *Twombly*, 550 U.S. at 561–64).

**III. DISCUSSION**

As an initial matter, the Court notes that Plaintiff was granted leave to file second amended complaint [DE 48] in this Court's previous Order. [DE 72]. Plaintiff has yet to file a second amended complaint. Regardless, "[t]he sole purpose of this Second Amended Complaint is to substitute Moman Anderson, Sr. as Plaintiff, [in his capacity] as the Administrator of the Estate of Moman Anderson, Jr." [DE 48 at 318]. Accordingly, even if Plaintiff does amend the complaint, it will not moot Wellpath's motion to dismiss. *See Greater Cincinnati Coal. for Homeless v. City of Cincinnati*, No. C-1-08-603, 2009 WL 3029661, at *4 (S.D. Ohio Sept. 16, 2009) (explaining that "when the amended complaint is substantially identical to the original complaint," such as ""when a motion to amend only addresses a discrete issue, it may not moot the underlying motion to dismiss," it may will moot a motion to dismiss). [*See also* DE 72 at 953 ("Because Plaintiff's

second amended complaint does not change the substance of the claims, it does not moot Wellpath's motion.")].

Accordingly, the Court will dispose of the motion to dismiss now. Additionally, for the remainder of this Order and unless specifically indicated, the Court will not distinguish between Defendants Wellpath, LLC and Nominal Defendant Wellpath Liquidating Trust Wellpath, LLC, but will refer to "Wellpath" generally.

*A. Count II: Negligence Per Se*

Negligence *per se* "is merely a negligence claim with a statutory standard of care substituted for the common law standard of care." *Young v. Carran*, 289 S.W.3d 586, 588–89 (Ky. App. 2008) (citations omitted). Under Kentucky's negligence *per se* statute, a person who is "injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation." KRS § 446.070. To state a claim for negligence *per se,* three requirements must be met: (1) "the statute in question must be penal in nature or provide no inclusive civil remedy"; (2) "the party must be within the class of persons the statute is intended to protect"; and (3) "the plaintiff's injury must be of the type the statute was designed to prevent." *Higgs v. Golden Gate Natl. Senior Care, LLC,* No. 3:17-CV-00192-CRS, 2018 WL 1997767, at *3 (W.D. Ky. Apr. 27, 2018) (quoting *Puckett v. Salyersville Healthcare Ctr.*, 2015 WL 3643437, *2 (Ky. App. 2015) (citations omitted)).

1. <u>501 KAR 3:090</u>

Plaintiff's amended complaint alleges that all "Defendants owed a statutory duty of care to Moman Anderson, Jr. under 501 KAR 3:090 to see that Moman Anderson, Jr. received reasonable medical treatment while in custody;" "to prevent inmates from administering medical treatment to other inmates;" and "to provide emergency medical care to inmates when needed." [DE 25 at 170–

72]. Wellpath argues that Plaintiff's negligence *per se* claim under 501 KAR 3:090 must fail because the regulation does not impose any of the duties of care Plaintiff alleges.

On its face, 501 KAR 3:090 does not apply to prison healthcare providers like Wellpath. Instead, the regulation imposes duties on jailers and jail personnel to ensure medical services are available and provided to inmates. Even if the regulation did apply to contracted healthcare providers, it does not create a statutory duty of care to provide "reasonable medical treatment." [DE 25 at 170]. The term "reasonable medical treatment" does not appear anywhere in the regulation. While the regulation provides that "prisoners shall not perform any medical functions within the jail," this does not establish any affirmative duty to prevent such care from being administered. If the regulation's drafters intended to establish a new duty of care for healthcare professionals, they would have done so explicitly. *See, e.g.*, *Higgs*, 2018 WL 1997767, at *3 (holding a statute that "simply prescribes procedures, committees, and methods that the state of Kentucky must follow" did not provide a standard of care to which defendants could be held).

Finally, the command "[i]f emergency care is needed, it shall be provided" comes the closest to establishing a duty of care for jail personnel. But Plaintiff gives no reason to for the Court to find that such a duty was delegated to Wellpath. [DE 44 at 286]. Because Plaintiff does not identify a statutory standard of care applicable to Wellpath, her negligence *per se* claim under 501 KAR 3:090 must be **DISMISSED**.

2. <u>501 KAR 3:060</u>

Count II of Plaintiff's amended complaint asserts that Wellpath was negligent *per se* under 501 KAR 3:060 in failing to conduct in-person surveillance of Moman Anderson, Jr. while he was in custody at LMDC. [DE 25 at 170–71]. Wellpath argues that Plaintiff's negligence *per se* claim

under 501 KAR 3:060 must fail because Wellpath and its staff are not "jail personnel." [DE 39-1 at 231].

In *Milby v. Underwood*. No. 3:23-CV-49-RGJ, 2024 WL 345525 (W.D. Ky. Jan. 30, 2024), the plaintiffs' claim was dismissed because they failed to "explain why any employees of [the contracted prison healthcare provider] would be responsible for meeting the requirements of 501 KAR 3.060, which specifically assigns prisoner supervision responsibilities to 'jail personnel,' not to contracted healthcare providers." *Id*. at *4. The same is true here. Plaintiff argues a provision of the Wellpath contract requires them to supervise inmates: "Wellpath shall identify to Metro those members of the Jail population with medical or mental health conditions which may be worsened as a result of being incarcerated at the Jail or which may require extensive care while incarcerated." [DE 44 at 286].[2] The Court does not find this language to "delegate[] any sort of responsibility for LCDC's regular supervisory requirements to [Wellpath]." *Milby*, 2024 WL 345525, at *4. Nor does Plaintiff specifically allege how this provision was breached during Wellpath's care of Decedent. [DE 25 at 170]. Thus, Plaintiff has failed to state a claim for negligence *per se* and Count II must be **DISMISSED.**

[2] Plaintiff asserts that the Court may not consider Wellpath's contract with LMDC at the motion to dismiss stage. [DE 44 at 286]. The Court, however, "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein" without converting to a summary judgment. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). Consideration of such documents attached to a motion to dismiss "acts as a protection for the defendant, without which 'a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document upon which it relied.'" *Bihn v. Fifth Third Mortg. Co.*, 980 F. Supp. 2d 892, 898 (S.D. Ohio 2013) (quoting *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997)). Wellpath's contractual relationship with LMDC is referenced in the amended complaint and its contract is central to Plaintiff's claims. Accordingly, the Court may consider it.

3. <u>501 KAR 3:160</u>

Finally, Plaintiff asserts that Wellpath owed a duty to of care "to Moman Anderson, Jr. and other inmates under 501 KAR 3:160 to ensure that all jail personnel receive a minimum of twenty-four (24) hours of annual in-service training. . ." and "to ensure that jail personnel have current training in standard first aid and be certified to perform CPR." [DE 25 at 121]. Kentucky regulations call for 24 hours of annual in-service training for jail personnel, including at least four hours for mental health training within the first year (and then one hour each following year) focusing on "mental health triage or mental health services to the jail," and training focused on medical awareness. 501 KAR 3:160. As in *Milby*, Plaintiff has not sufficiently alleged that these regulatory duties were delegated to Wellpath. 2024 WL 345525, at *4 n.2 ("[A]lthough WKCH agreed to provide training in its contract, the ultimate responsibility for making sure jail personnel were trained still fell to LCDC"). Accordingly, the Court **GRANTS** Wellpath's motion to dismiss as to Count II.

*B. Counts IV and V: Monell Claims*

1. <u>Count IV: Policy or Custom</u>

To state a § 1983 claim based on a municipal policy or custom, Plaintiff must "identify the policy, connect the policy to [Wellpath] itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993). A plaintiff generally has four ways to demonstrate an unlawful policy or custom: "[t]he plaintiff can look to (1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations." *Spears v. Ruth*, 589 F.3d 249, 256 (6th Cir. 2009) (quoting *Thomas v. City of Chattanooga*, 398 F.3d 426,

429 (6th Cir. 2005)). To sustain a claim based on the theory that a municipality had a custom of tolerance or acquiescence to the violation, a plaintiff must allege:

> (1) "a clear and persistent" pattern of unconstitutional conduct by municipal employees; (2) the municipality's "notice or constructive notice" of the unconstitutional conduct; (3) the municipality's "tacit approval of the unconstitutional conduct, such that [its] deliberate indifference in [its] failure to act can be said to amount to an official policy of inaction"; and (4) that the policy of inaction was the "moving force" of the constitutional deprivation, such that the plaintiff's constitutional injury was directly caused by the conduct of the municipality rather than simply by the conduct of the municipal employee.

*D'Ambrosio v. Marino*, 747 F.3d 378, 387 (6th Cir. 2014).

To establish municipal liability, a plaintiff must demonstrate a direct causal link between the unlawful policy or custom and the alleged constitutional violation, proving that the municipality's deliberate conduct was the "moving force" behind the injury. *Jones v. Louisville/Jefferson Cnty. Metro Gov't*, 482 F. Supp. 3d 584, 597 (W.D. Ky. 2020) (quoting *Spears*, 589 F.3d 249 at 256 (cleaned up)). Merely showing that a policy or custom made a particular violation "likely" to occur is legally insufficient. Instead, there must be an "affirmative link" between the municipal policy and the violation; under traditional tort principles, this causal connection must be proximate, rather than a mere "but-for" cause-in-fact. *Mann v. Helmig*, 289 F. App'x 845, 850 (6th Cir. 2008) (quoting *Spell v. McDaniel*, 824 F.2d 1380, 1388 (4th Cir. 1987)). At the motion to dismiss stage, it is sufficient for a plaintiff to plausibly allege an unlawful policy or custom and a direct causal link to the harm. *Daugherty v. Louisville-Jefferson Cnty. Metro Gov't*, 495 F. Supp. 3d 513, 524 (W.D. Ky. 2020) (finding plaintiff sufficiently stated a § 1983 claim based on a municipal policy or custom where "Plaintiff [] plausibly alleged that Louisville Metro has an illegal policy or custom of disproportionately stopping and searching African-Americans" and "plausibly connected this policy or custom to [the officer's] conduct in his case").

Wellpath argues that Plaintiff's policy or custom claim must be dismissed because Plaintiff fails to identify an unlawful practice or policy that can be attributed to Wellpath specifically. [DE 39-1 at 234]. Wellpath maintains that "dismissal is also appropriate because Plaintiff fails to allege sufficient facts to support the theory that a 'persistent and widespread practice of deliberate indifference to the needs of LMDC inmates/detainees' amounted to an 'official custom and practice.'" [DE 39-1 at 236]. In response, Plaintiff maintains that Wellpath ignores the many factual allegations in the amended complaint that, drawing all reasonable inferences in favor of Plaintiff, demonstrate that Wellpath had a custom of tolerance to federal rights violations. [DE 44 at 290–91].

Contrary to Wellpath's argument, Plaintiff alleges sufficient facts to support a *Monell* claim based on custom of tolerance or acquiescence to federal rights violations. For example, Plaintiff alleges that Wellpath systemically ignored the use of illegal drugs in the facility, including an instance that was recorded on video where a Wellpath nurse gave unprescribed narcotics to an inmate. [DE 25 ¶¶ 35, 56]. Plaintiff alleges there was no investigation of the Wellpath nurse incident or an arrest of the nurse. [*Id.* ¶ 35]. Plaintiff claims numerous overdose deaths have occurred due to systemic failures, and that Wellpath has "ignore[d] or otherwise not properly "address[ed] [the] issue of illegal drugs and other dangerous substances being brought into the facility . . . ." [*Id.* ¶ 56]. Thus, Plaintiff alleges a pattern of unconstitutional conduct—that is, "not properly addressing [the] issue of illegal drugs and other dangerous substances being brought into the facility," resulting in the deaths of inmates [*Id.*]. She also alleges that Wellpath "had direct, personal, and specific knowledge" of the pattern of unconstitutional conduct but failed to correct the issue. [*Id.* ¶ 102]. Finally, she alleges that this failure resulted in the Decedent's death. [*Id.* ¶ 59 ("Had the Defendants not been deliberately indifferent to the rampant drug problems at LMDC,

Moman Anderson, Jr. would not have died."). Drawing all reasonable inferences in favor of Plaintiff, the Court finds that Plaintiff sufficiently alleges a policy, custom, or practice on the part of Wellpath that caused the constitutional injury. The Court **DENIES** Wellpath's motion to dismiss as to Count IV.

2. Count V: Failure to Train

To establish *Monell* liability for failure to train or failure to supervise, a plaintiff must allege: "(1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006). As to the municipality's "deliberate indifference," the plaintiff must either allege: (1) "prior instances of unconstitutional conduct demonstrating that the [municipality] has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury"; or (2) "[A] single violation of federal rights, accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation[.]" *Fisher v. Harden*, 398 F.3d 837, 849 (6th Cir. 2005); *Bd. of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 409 (1997).

Wellpath argues that the amended complaint fails to allege facts demonstrating prior instances of unconstitutional conduct, so she cannot rely on the first avenue to establish deliberate indifference. [DE 39-1 at 238]. Wellpath also maintains that Plaintiff cannot rely on the second mode of proof for deliberate indifference because "[u]nder the facts of the Complaint, it is not obvious that overdoses were 'recurring situations' at LMDC." [*Id.* at 239]. Thus, Wellpath's argument focuses only on the deliberate indifference prong.

As discussed above, the amended complaint alleges prior instances of unconstitutional conduct such that Wellpath would be on notice of the deficiency of training. Plaintiff alleges that a Wellpath nurse gave an inmate narcotics that he was not prescribed, that Wellpath knew that illegal drugs were being brought into the jail and provided to inmates but failed to monitor or investigate those providing illegal substances, and that numerous other inmates died of overdoses prior to Decedent. [DE 25 ¶¶ 34, 35, 56]. Plaintiff further alleges that Decedent would not have died had Wellpath "maintained a training, supervision and policy adherence program that was not deficient to the point where it was deliberately indifferent to inmate safety and medical needs." [*Id.* ¶ 120]. Accordingly, Plaintiff alleges sufficient facts to draw a reasonable inference that Wellpath employees engaged in prior instances of unconstitutional conduct such that Wellpath was on notice that its training was deficient and likely to cause injury. Plaintiff further alleges that Wellpath's failure to train caused Decedent's injury.

Wellpath also argues that the *Monell* claims should be dismissed on the ground that the amended complaint "is silent about whether [Decedent] was a pre-trial detainee or in custody post-sentencing," so it is unclear whether the Eighth or Fourteenth Amendment applies. [DE 39-1 at 239]. The Eighth Amendment protects convicted prisoners, *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983), while the claims of pre-trial detainees are protected under the Fourteenth Amendment Due Process Clause. *Richko v. Wayne Co., Mich.*, 819 F.3d 907, 915 (6th Cir. 2016). While the amended complaint fails to specify whether Decedent was a pre-trial detainee or a convicted inmate, this omission alone does not warrant dismissal. While a complaint must give the defendant fair notice of the plaintiff's claim and the grounds on which it rests, the complaint "need not set down in detail all the particularities of the plaintiff's claim[.]" *Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir. 1994) (quoting *Westlake v. Lucas*, 537 F.2d 857, 858

(6th Cir. 1976)). "At the motion to dismiss stage, it is sufficient for a plaintiff to plausibly allege an unlawful policy or custom and a direct causal link to the harm." *Milby*, 713 F. Supp. 3d at 390 (citing *Daugherty*, 495 F. Supp. 3d at 524). Plaintiff has done so here. As a result, the Court will **DENY** Wellpath's motion to dismiss as to Counts IV and V.

## IV. CONCLUSION

For the reasons above, the Court **ORDERS** that Wellpath's motion to dismiss [DE 39], as adopted by the Trust [DE 74], is **GRANTED in part and DENIED in part**.

Rebecca Grady Jennings, District Judge
United States District Court

September 25, 2026